**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **CLARICE HIGGINS and ROBERT HIGGINS,** | ) | |
| **PLAINTIFFS,** | ) | **CIVIL ACTION:** 07-4614 JRT/FLN |
| **vs.** | ) | **DEMAND FOR JURY TRIAL** |
| **DAVOL, INC. and C.R. BARD, INC.;** | ) | |
| **DEFENDANTS.** | ) | |

---

## COMPLAINT

---

### PARTIES

1. Plaintiff CLARICE HIGGINS is an individual over 19 years of age and a resident citizen of Walker County, Alabama. Plaintiff ROBERT HIGGINS is an individual over 19 years of age and a resident citizen of Walker County, Alabama.

2. Defendant, DAVOL, INC., ("DAVOL") is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL specializes in surgery products utilized in hernia repair, hemostatis, orthopedics, and laparoscopy.

3. Defendant, C.R. BARD, INC., ("BARD") is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. At all times relevant hereto DAVOL and BARD transacted business

SCANNED
NOV 15 2007
U.S. DISTRICT COURT MPLS

in the Northern District of Alabama, and continue to sell the "Kugel Patch" throughout Alabama, including the Northern District.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and Plaintiffs and Defendants are resident citizens of different states.

5. Venue in this Court is proper pursuant to 28 U.S.C. §1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants are subject to personal jurisdiction in this district.

## FACTS

6. Defendant DAVOL designed, manufactured, and distributed the Kugel Patch, a hernia mesh patch that was inserted into Ms. Higgins' body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Ms. Higgins' body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9. Ms. Higgins underwent surgery on December 18, 2001 at Walker Baptist Medical Center. The operative report states that the operation performed was a "[r]epair of recurrent incisional hernia with Marlex Gore-Tex prosthesis (Bard-Kugel patch.)" The report further states: "Bowel was cleared from the abdominal wall on all areas for placement of a Kugel patch. A 0 Surgilon suture was placed through the ring of the Kugel patch. It was then placed in the defect and

sutured to the posterior fascia and peritoneal area. A 0 Surgilon suture was then placed through the fascial edges and to the Marlex portion of the patch for further attachment of the patch to the area. There was adequate closure of the defect following the procedure." The Plaintiff tolerated the procedure well and was sent to the recovery room in satisfactory condition.

10. The progress notes from the surgery identify the Kugel patch as a large oval, size 14cm x 18cm, REF 0010202, LOT 43ILD120.

11. Because of complications with the Kugel Patch, Plaintiff was required to undergo surgery at Princeton Baptist Montclair Hospital to have the patch removed in 2004.

12. Despite efforts, Ms. Higgins continued to have problems, and developed an enterocutaneous fistula. This required an additional surgical procedure recently.

13. Plaintiff Higgins has suffered and will continue to suffer physical pain and suffering, as well as severe mental anguish. Mr. Hall has endured, and will continue to endure, loss of consortium.

14. Ms. Higgins has incurred substantial medical bills and lost wages.

15. The Kugel Patch hernia repair product implanted in Ms. Hall was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

16. FDA Class I recalls are issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

17. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice.

18. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intentional fistulae, bowel perforation and even death have been reported.

19. On March 31, 2006, the initial Class I recall on the Kugel Patch was expanded to include other types of Kugel Patch grafts used in hernia repair.

20. DAVOL also issued an alert to healthcare professionals on March 24, 2006 with advice regarding patients who may have the Bard Composix Kugel Mesh Patch. In the letter, DAVOL urged any physicians or surgeons whose patients had been given the Bard Composix Kugel Mesh Patch to identify those patients, communicate the dangers about the patch with them, examine them for any reactions, evaluate their situation before and after removing the patch, and report any findings to DAVOL and the FDA.

21. On January 10, 2007, DAVOL/BARD expanded an earlier recall to include all lot numbers of product codes of 0010202, 0010204, 0010206, 0010207, 0010208, and 0010209 (covering six size categories, including the size used in Ms. Higgins).

22. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

23. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

24. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

25. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

## COUNT I

### Negligence

26. The Plaintiffs hereby adopt and incorporate by reference all the above allegations.

27. Defendants DAVOL and BARD were negligent in the following respects:

28. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

29. DAVOL and BARD at all times herein knew of, in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were likely to injure the Kugel Patch's users.

30. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which they intended.

31. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew of or should have known the Kugel Patch would cause serious injuries, yet they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard for the safety of Plaintiff.

32. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn her and her treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

33. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

34. As a direct and proximate result of the duties breached by both Defendants, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in the serious injuries to Plaintiff.

35. DAVOL's and BARD's conduct in continuing to market, sell, and distribute the Kugel Patch after obtaining knowledge they were defective, reflects a callous or a conscious disregard for the safety of others, justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter DAVOL and BARD from similar conduct in the future.

36. As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and is entitled to damages enumerated below.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendants for compensatory and punitive damages in an amount to be determined by the jury to be necessary and just, plus costs.

**COUNT II**

**Failure to Warn**

37. The Plaintiffs hereby adopt and incorporate by reference all the above allegations.

38. In the course of business, DAVOL and BARD designed, manufactured and sold the

Kugel Patch for hernia repair surgeries.

39. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Ms. Hall received the Kugel Patch, the patch was defective and unreasonably dangerous when put to its intended and reasonably anticipated use. Further, the Kugel Patches, including the one implanted in the Plaintiff, were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

40. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

41. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had her hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed and sold.

42. Neither Plaintiff nor her physicians knew of the defects in the Kugel Patch at the time it was implanted.

43. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

44. As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff has sustained injuries and is entitled to damages enumerated below.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, for compensatory and punitive damages in an amount determined by the jury to be necessary and just, plus costs.

**COUNT III**

**Breach of Warranty of Merchantability**

45. The Plaintiff hereby adopts and incorporates by reference all of the above allegations.

46. When Defendants placed the Kugel Patch into the stream of commerce, it knew that the device would be used to treat patients who were having hernia repair, and expressly and impliedly warranted to the Plaintiff and others that use of the device was safe, acceptable, and would assist in the healing of surgical procedures.

47. Plaintiff reasonably relied upon the expertise, skill, judgment, and knowledge of the Defendants, and upon the express and/or implied warranty that the Kugel Patch was of merchantable quality and fit for the use of which it was designed.

48. In fact, the Kugel Patch was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purpose for which it was used, because it caused injuries and damages to the Plaintiff as previously described herein.

49. As a direct and proximate consequence of the actions and conduct of the Defendants, Plaintiff has sustained injuries and is entitled to damages set forth below.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, for compensatory and punitive damages in an amount determined by the jury to be necessary and just, plus costs.

## COUNT IV

### Fraud - Suppression and Misrepresentation

50. The Plaintiff hereby adopts and incorporates by reference all of the above allegations.

51. The Defendants breached their duty to disclose to Plaintiff (including those duties established under 21 C.F.R.§§ 1.21, 99.101; 201.56; 201.57; 310.303; 314.70; 318.80; and 314.81 as well as under the other laws of the State of Alabama and others) by willfully and recklessly providing false, incomplete and misleading information regarding the Kugel Patch, and the Defendants acted with deliberate intent to deceive and mislead Plaintiff, as well as her physicians, who Defendants knew would be relying on Defendants to convey accurate and complete safety information on the device.

52. Plaintiff and her physicians reasonably relied upon these inaccurate and fraudulent misrepresentations, and relied upon the absence of adverse safety information about the Kugel Patch, which the Defendants did suppress, conceal, or fail to disclose, and suffered damage and injury as a result thereof.

53. As a direct and proximate result of the Defendant's willful, fraudulent and intentional misrepresentations, made with the intent to deceive Plaintiff and others, Plaintiff suffered severe injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; loss of capacity for the enjoyment of life; lost earnings and lost earnings capacity; expense of hospitalization, medical, and nursing care and treatment and medical monitoring; fear and mental anguish concerning future medical problems, including, but not limited to those associated with her injuries; and as otherwise set forth in this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

Defendants, for compensatory and punitive damages in an amount determined by the jury to be necessary and just, plus costs.

## COUNT V

## Loss of Consortium

54. Plaintiff Robert Higgins claims damages for loss of consortium as a consequence of the injuries sustained by his wife, which were caused by the defective Kugel Patch.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendants, for compensatory and punitive damages in an amount determined by the jury to be necessary and just, plus costs.

## Demand for Jury Trial

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.

Dated: ~~14th~~ 15th of November, 2007.

Amy Lynn Ewald

/s/ Amy Lynn Ewald
Amy Lynn Ewald
Minnesota ID: 0342750

***Of Counsel:***

**Amy Lynn Ewald**
**8357 Allegheny Grove**
**Victoria, MN 55386**
**Tel: 612-226-0094**
**E-mail: amylynnstued@hotmail.com**

**W. Lewis Garrison, Jr.**
**Timothy C. Davis**
**William L. Bross**
**HENINGER GARRISON DAVIS, LLC**
**2224 First Avenue North**

**Birmingham, AL 35203**
**Tel: (205) 326-3335**
**Fax: (205) 326-3332**

**Todd Harvey**
**Peter Burke**
**BURKE HARVEY & FRANKOWSKI**
**One Highland Place**
**2151 Highland Avenue**
**Birmingham, AL 35205**
**205.930.9091 Telephone**
**205.930.9054 Facsimile**